UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRANCIS S. M., | Civil Action No. 19-8053(MCA) |
| Petitioner, | |
| v. | MEMORANDUM OPINION |
| THOMAS DECKER, et. al, | |
| Respondents. | |

## I. INTRODUCTION

This matter has been opened to the Court by Petitioner's filing of a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his prolonged detention and his letter requests for immediate release due to the COVID-19 pandemic. For the reasons explained in this Memorandum Opinion, the Court will deny the Petition's challenge to Petitioner's prolonged detention without prejudice, and will direct the Clerk of the Court to sever and transfer Petitioner's letter requests for immediate release to the United States District Court for the Western District of New York, which is Petitioner's current district of confinement.

## II. FACTUAL BACKGROUND

### a. Petitioner's Immigration Proceedings

On March 25, 2015, Petitioner, a native and citizen of India, was served with a Notice to Appear ("NTA") charging him with removability as an alien who has been admitted to the United States but was removable under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") as a nonimmigrant who has remained in the United States for a time longer than permitted. *See* ECF No. 6, Ex. A, Notice to Appear.

1

On December 11, 2017, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). *See id.* On May 11, 2018, Petitioner was served by ICE with a Form I-261 Additional Charges of Inadmissibility/Deportability changing the charge of removability to that of an arriving alien and charging Petitioner with removability pursuant to section 212(a)(7)(A)(i)(I) of the INA as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required. *See* ECF No. 6, Ex. B, Form I-261. In support of the additional charge of removability, ICE alleged that on December 30, 2002, Petitioner was paroled into the United States in Buffalo, New York with permission to remain until May 12, 2003.[1] *See id.*

On September 18, 2018, the immigration court conducted an individual hearing on the merits of Petitioner's application for relief and denied his application for relief and ordered him removed to India. *See* ECF No. 6, Ex. C, September 18, 2018 Immigration Court Decision. Petitioner filed an appeal of the immigration judge's decision. On March 11, 2019, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. *See id.*, Ex. F, March 11, 2019 BIA Decision.

On March 28, 2019, Petitioner filed a petition for review with the Second Circuit. *See* ECF No. 6, Ex. G, Second Circuit Docket Entry 19-776, which was subsequently denied on July 15, 2019. *Id.* at No. 53; *see also* ECF No. 18-2, Schultz Decl. ¶ 14.

---

[1] Petitioner admitted the substituted allegations and conceded the 212(a)(7)(A)(i)(I) charge. *See* ECF No. 6, Ex. C at p. 3.

On August 14, 2019, ICE requested a travel document from the consulate of India in New York, which would have allowed for Petitioner's removal from the United States. Schultz Decl. ¶ 15. Petitioner refused to sign the travel document application. *Id.*

On September 16, 2019, Petitioner filed a motion to reopen with the BIA. *Id.* ¶ 16. ICE filed opposition to the motion on November 12, 2019. *Id.* The motion remains pending with the BIA. *Id.*

On September 26, 2019, an immigration judge conducted a bond hearing pursuant to *Guerrero-Sanchez v. Warden, York County Prison*, 905 F.3d 208 (3d Cir. 2018). *Id.* ¶ 17; ECF No. 18-1, Ex. A, September 26, 2019 Immigration Court Decision. The immigration judge denied bond finding that ICE had established by clear and convincing evidence that Petitioner is a danger to the community. *See* ECF No. Ex. A, September 26, 2019 IJ Decision. The immigration judge noted Petitioner's arrest on November 27, 2016 for criminal contempt in the second degree in violation of New York Penal Law ("NYPL") § 212.50 resulting in a guilty plea for disorderly conduct. *Id.* An order of protection was issued against him. *Id.* The immigration judge also noted that Petitioner was again arrested on June 13, 2017 for driving while intoxicated, aggravated driving while intoxicated, and additional traffic violations, and on December 4, 2017, Petitioner pled guilty to aggravated driving while intoxicated in violation of New York Vehicle and Traffic Law ("NYVTL") § 1192. *Id.* The immigration judge further noted that while in detention, Petitioner was involved in a physical altercation with another detainee on April 17, 2018. *Id.* The immigration court stated it was "troubled by the [petitioner's] criminal history and particularly his conviction for driving while intoxicated." *Id.* The immigration judge further found that Petitioner "has shown a pattern of disregarding the laws of the United States." *Id.* Finally, the IJ also referenced Petitioner's removal order and DHS's representation that "the

respondent's removal from the United States is imminent." *Id*. Ultimately, the immigration judge found that ICE met its burden of establishing by clear and convincing evidence that Petitioner was a danger to the community due to the evidence of criminal and disciplinary history, and that he was risk of flight. *Id.* (finding that "the Department has established that, if released, the [Petitioner] would not have an incentive to comply with his removal order. He therefore poses too significant a flight risk and cannot be granted bond."). On November 26, 2019, Petitioner filed an appeal of the September 26, 2019 bond decision with the BIA that remains pending. Schultz Decl. ¶ 18.

On December 10, 2019, ICE received an Electronic Travel Document ("ETD") from the consulate of India in New York that allowed for Petitioner's removal to be completed. *Id.* ¶ 19. On December 27, 2020, an itinerary was issued and Petitioners' removal was scheduled for December 30, 2019 on a commercial flight. *Id.* ¶ 20. On December 30, 2019, Petitioner became verbally and physically uncooperative, preventing ICE officers from being able to board him on the flight and leading the airline to refuse to board him. *Id.* ¶ 21. On January 14, 2020, Petitioner was scheduled to be removed on February 10, 2020 on a United flight out of Newark, New Jersey. *Id.* ¶ 22. However, Petitioner once again became verbally and physically uncooperative and ICE officers were unable to board him on the flight. *Id.* ¶ 23.

On February 28, 2020, Petitioner's travel document was renewed with a May 26, 2020 expiration date. *Id.* ¶ 24. As of March 12, 2020, Petitioner was scheduled for removal to India on April 6, 2020, on an Air India charter flight. *Id.* ¶ 25. However, due to the COVID-19 pandemic, travel to India is currently restricted through May 3, 2020. *See* ECF No. 19, Ex. 1.[2]

---

[2] *See* ECF No. Ex. 1, Consulate General of India, New York, Addition Advisory on COVID-19 : Ban on all international commercial passenger aircraft extended till May 03, 2020 (Apr 14, 2020).

4

### b. The Petition

The Petition challenges Petitioner's prolonged detention during his removal proceedings. ECF No. 1. After briefing was completed, Petitioner wrote to the Court stating that ICE was attempting to deport him prior to the completion of his case. *See* ECF No. 10. Counsel subsequently entered an appearance on Petitioner's behalf. *See* ECF No. 12. On March 9, 2020, Petitioner again wrote a letter to the Court asserting that ICE was trying to deport him without a deportation order. *See* ECF No. 14. On April 3, 2020, the Court directed the parties to provide a status update. ECF No. 15. On April 10, 2020, Petitioner's counsel filed a letter request for his immediate release due to the COVID-19 pandemic. ECF Nos. 17, 19. Respondents responded to the Court's Order, opposing Petitioner's released due to his prolonged detention. Respondents' status update does not address Petitioner's request for immediate release due to COVID-19.

### III. ANALYSIS

The Court first addresses Petitioner's claim of prolonged detention followed by his letter request for immediate release due to the COVID-19 pandemic.

### a. Prolonged Detention Under *Zadvydas* and *Guerrero-Sanchez*

The parties agree that Petitioner has a final order of removal.[3] Once an alien has a final order of removal, he becomes subject to the "post-order" detention provisions of 8 U.S.C. §1231(a) absent a stay of removal by the Circuit Court of Appeal. *See Zadvydas v. Davis*, 533 U.S. 678, 682-83 (2001). Under 8 U.S.C. §1231(a)(1)(A), when an alien is ordered removed, the Secretary of the Department of Homeland Security ("DHS") "shall remove the alien from the

---

[3] Petitioner appears to believe that ICE is not permitted to remove him from the United States while his "case" is pending. Because the Second Circuit has dismissed his appeal, his order of removal is final and he may be removed from the United States unless the BIA grants his motion for a stay and/or to reopen his proceedings.

United States within a period of 90 days." During this ninety-day period, DHS must detain the alien. *See* 8 U.S.C. §1231(a)(2).

In *Zadvydas v. Davis*, the Supreme Court held that post-removal detention pursuant to section 1231(a)(6) must be limited "to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. 678, 689 (2001).  After the six-month period, the alien bears the burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. If the alien successfully makes that showing, "the Government must respond with evidence sufficient to rebut that showing." *Id.* "Therefore, in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Di Wang v. Carbone*, Civ. No. 05-2386 (JAP), 2005 WL 2656677 at *3 (D.N.J. Oct. 17, 2005) (quoting *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

In *Guerrero-Sanchez*, the Third Circuit held that in addition to the rights announced by the Supreme Court in *Zadvydas*, "§ 1231(a)(6) affords a bond hearing after prolonged detention to any alien who falls within the ambit of that provision." *Guerrero-Sanchez*, 905 F.3d at 211. In accordance with *Guerrero-Sanchez*, "alien[s, like Petitioner,] detained under § 1231(a)(6) [are] generally entitled to a bond hearing after six months (i.e., 180 days) of custody." *Id.* at 226. At that hearing, the alien is entitled to release from detention unless the government establishes that the alien poses a risk of flight or a danger to the community. *Id.* at 224 (citation omitted). Nevertheless, "'[i]f the 180-day threshold has been crossed, but the alien's release or removal is imminent ... [then] the government [is not] required to afford the alien a [bond] hearing before an immigration judge.'" *Id.* at 226 n.15 (citation omitted).

Detention under § 1231(a)(6) remains governed by the principles set forth in *Zadvydas* after an alien is denied bond at a *Guerrero-Sanchez* bond hearing. *See Shahbaz H. v. Green*, No. CV 19-8052 (SDW), 2019 WL 2723880, at *2 (D.N.J. July 1, 2019) (finding that petitioner who has been denied a *Guerrero-Sanchez* bond hearing "could only be entitled to relief from his current immigration detention if he could establish that he is entitled to release under *Zadvydas*."). Therefore, under *Zadvydas*, once the six-month period expires, an alien seeking relief must first present the Court with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Alexander v. Att'y Gen.*, 495 F. App'x 274, 276 (3d Cir. 2012) (quoting *Zadvydas*, 533 U.S. at 701). "Where an alien meets this initial burden, the Government can establish its continued authority to detain only if the Government can rebut his evidence and show that the alien's removal remains likely in the reasonably foreseeable future." *See Shahbaz H.*, 2019 WL 2723880, at *2 (D.N.J. July 1, 2019).

Crucially, an alien cannot meet the initial burden if he or she has failed to cooperate with removal efforts. 8 U.S.C. § 1231(a)(1)(C); *Kallon v. Holder*, Civ. No. 14-651 (JLL), 2014 WL 5343307, at *3 (D.N.J. Oct. 20, 2014); *Diaz-Martin v. Holder*, 11-6692, 2012 WL 4661479, at *4-5 (D.N.J. Oct. 2, 2012); *Camara v. Gonzalez*, No. 06-1568, 2007 WL 4322949, at *4 (D.N.J. Dec. 6, 2007). As the Ninth Circuit has held, "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003); *Xiangquan v. Holder*, No. 12–7650, 2013 WL 1750145, at *3 (D.N.J. Apr.23, 2013) ("[A]n alien who, during his/her presumptive Zadvydas based period takes actions delaying his/her removal (e.g. by refusing to cooperate with the ICE's removal efforts), cannot

demand his/her release upon expiration of these six months. . . . Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in *Zadvydas*, thus causing a quasi-tolling mimicking, in its operation[.]") (internal citations omitted).

Here, Petitioner's detention under § 1231(a)(6) remains lawful because he was provided a *Guerrero-Sanchez* hearing and because he cannot meet his *Zadvydas* burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future because he has repeatedly refused to cooperate removal efforts.[4] Moreover, on February 28, 2020, Petitioner's travel document was renewed through May 26, 2020, which is approximately one month away. Although travel to India is currently restricted, ICE asserts that it intends to schedule Petitioner on the earliest flight available to India.

For these reasons, the Court finds that Petitioner cannot currently prevail on his claim that there is no reasonable likelihood of removal under *Zadvydas*, and the Court will deny Petitioner's claim with respect to his prolonged detention without prejudice to his filing of <u>a new petition in the district of confinement</u> should the travel ban continue and Petitioner's removal become unlikely in the reasonably foreseeable future.

### b. Petitioner's COVID-19 Request for Immediate Release

On April 10, 2020, Petitioner's counsel filed a letter request for immediate release, citing Petitioner's serious underlying medical conditions and the COVID-19 pandemic. The letter

---

[4] Petitioner's counsel asserts that Petitioner was not afforded a bona fide *Guerrero-Sanchez* hearing and that the IJ improperly relied on the ICE's assertion that Petitioner's removal was imminent. *See* ECF No. 17. A copy of that decision has been provided to the Court, and there is no indication that the Immigration Judge did not place the burden on the government to establish that Petitioner was a danger and a flight risk. Petitioner's disagrees with the outcome of the bond hearing, but such arguments must be made to the BIA on appeal and not to a habeas court. Petitioner's counsel also cites Petitioner's continued detention as proof that his removal was not imminent but does not address or dispute Petitioner's failure to cooperate with the ICE's efforts to remove him.

request is not accompanied by an Amended Petition or a motion for a temporary restraining order or preliminary injunction pursuant to Fed. R. Civ. P. 65. Moreover, Petitioner is currently detained at Buffalo Federal Detention Facility ("BFDF"), and the Warden of that facility is not a party to this action or within the jurisdiction of this Court.[5] Finally, the Court has resolved the underlying Petition in this matter, which challenged prolonged detention; as such, there is no basis for granting Petitioner's request for immediate release pending a decision about his prolonged detention. For these reasons, Petitioner's request for immediate release due to the COVID-19 pandemic is not properly before the Court and is instead properly addressed in a new habeas action in the District where Petitioner is confined.[6]

Due to the serious nature of Petitioner's request for relief, the Court, in the interests of justice and pursuant to its authority under 28 U.S.C. § 1406(a), will direct the Clerk of the Court to transfer Petitioner's letter requests seeking immediate release (ECF Nos. 17, 19) to the United States District Court for the Western District of New York to be considered in the first instance. Once the matter is docketed, Petitioner's counsel should immediately file a proper habeas petition and motion pursuant to Fed. R. Civ. P. 65 with the United States District Court for the Western District of New York.

---

[5] "It is the warden of the prison or the facility where the detainee is held that is considered the custodian for purposes of a habeas action." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994); *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004).

[6] As the Supreme Court explained in *Padilla*, district courts "are limited to granting habeas relief 'within their respective jurisdictions.'" 542 U.S. at 442 (quoting 28 U.S.C. § 2241(a)). This rule "require[s] 'nothing more than that the court issuing the writ have jurisdiction over the custodian'" of the facility in which the detainee is imprisoned. *Id.* (quoting *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495 (1973). Here, the District Court for the Western District of New York has jurisdiction over Petitioner's custodian.

## IV. <u>CONCLUSION</u>

For the reasons explained in this Opinion, Petitioner's habeas challenge to his prolonged detention is DENIED without prejudice for the reasons stated in this Memorandum Opinion. The Court will direct the Clerk of the Court to sever and transfer Petitioner's letter requests for immediate release to the United States District Court for Western District of New York as soon as possible and CLOSE this matter accordingly.

DATED: April 23, 2020

                        THE HONORABLE MADELINE COX ARLEO
                        United States District Judge